UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH CELL PHONE CALL NUMBER (475)-227-1700 | Case No. 3:22MJ 490 (SJV) <br><br> **Filed Under Seal** |

**Affidavit in Support of Application for Search Warrant**

I, Matthew Borges, being duly sworn, state:

**Introduction**

1. I make this affidavit in support of an application for a search warrant for information associated with cell phone call number: (475) 227-1700 (referred to herein as "TARGET TELEPHONE"). The information is stored at premises controlled by Cellco Partnership DBA Verizon Wireless, a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey ("VERIZON" or "PROVIDER"). The information to be searched is described in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require the PROVIDER to disclose to the government copies of the information described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I have been a TFO with the ATF since November of 2019. I have been a Police Officer with the New Haven Police Department ("NHPD") since January 2013. During my tenure as a TFO and as a Police Officer, I have investigated a wide range of firearms and narcotics cases, as well as shootings, and have received specialized training and instruction relative to conducting firearm and narcotics related investigations from the NHPD and ATF. I

1

have received training, both formal and on-the-job, in the provisions of the federal firearms and narcotics laws administered under Titles 18, 21 and 26 of the United States Code.

3. In the course of my duties as a sworn Police Officer, I have prepared affidavits for search and arrest warrants and have successfully executed said warrants. I have participated in investigations involving the unlawful possession of firearms by prohibited persons, including persons who are previously convicted felons; the possession of firearms in furtherance of the distribution of narcotics; and the use of firearms in the commission of violent acts. I have participated in investigations involving individuals who unlawfully possess firearms. I have also spoken with informants and subjects, as well as local and federal law enforcement officers regarding the manner in which individuals obtain finance, store, manufacturer, transport, and distribute their illegal firearms and narcotics.

4. I am currently investigating Samuel DOUGLAS a.k.a. "Blamm" (the user of TARGET TELEPHONE) and others, to include, KIVEON HYMAN, PHILLIP MOYE, DONELL ALLICK, QUAYMAR SUGGS, TAIJOHN PRESTON, DEVINS SUGGS, ANTWAN HILL, HECTOR DELGADO for the following offenses: Title 18, United States Code, Section 1962(d) (Racketeering Conspiracy); Title 18, United States Code, Section 1959 (Violent Crimes in Aid of Racketeering); Title 18, United States Code, Section 922(g) (Possession of a Firearm by a Prohibited Person); Title 18, United States Code, Section 924(c) (Possession of a Firearm in Furtherance of a Crime of Violence) (referred to herein as the "TARGET OFFENSES"). Based on the facts set forth in this affidavit, there is probable cause to believe that a search as described in Attachment B of the information from the TARGET TELEPHONE as described in Attachment A will find evidence, instrumentalities, and fruits of the TARGET OFFENSES.

5.      I have participated in this investigation and, as a result of my participation and information received from other law enforcement officers, I am thoroughly familiar with the circumstances of the investigation and the information set forth in this affidavit. The statements contained in this affidavit are based on: (1) my personal participation in the investigation; (2) information provided to me by Special Agents and Task Force Officers of the ATF, (3) members of the FBI New Haven, DEA New Haven District Office, and New Haven Police Department (4) and my experience and training. Unless otherwise indicated, all conversations and statements described in this affidavit are related in substance and part.

6.      Because this affidavit is submitted for the limited purpose of establishing probable cause for the requested search warrant, it does not include all information gathered to date by the ATF and other law enforcement entities in relation to this investigation.

## Background

7.      The Exit 8 gang is a local street gang named after the geographic area accessed by exiting Interstate 91 at Exit 8 in New Haven, Connecticut. Members of this gang typically reside in, or have previously resided in, this geographic area, which is often referred to as "the 8." The area of Exit 8 includes several small housing projects off the Route 80 corridor, which are located on two major thoroughfares, Eastern Street and Quinnipiac Avenue. In recent years, this area has been riddled with shootings, murders, shots-fired incidents, and violent crimes. Members of Exit 8 have long-standing issues with other neighborhood gangs within the city, specifically gang members from within the Hill section of New Haven dating back to 2014 and 2015, and also individuals from an area of the city known as "the G," although violence has increased in recent years. Violence between these groups is often retaliatory in nature, and

3

members of Exit 8 are believed to be responsible for a number of non-fatal and fatal shootings in New Haven.

8. Members of the Exit 8 group/gang identify themselves by the numbers "8" and "88," and they often utilize the symbol of an eight ball. These symbols are found in social media posts, on clothing, and group members' tattoos and they are used to show allegiance to the group/gang. More recently, younger members of Exit 8 are also identifying themselves with the word "Honcho." This derives from the nickname of Dashown "Honcho" Myers, an Exit 8 member, who was murdered on February 23, 2020, on Quinnipiac Avenue and has been glorified posthumously by the group.

### May 19th, 2021 homicide of Tashawn Brown on Ella T Grass Boulevard in New Haven, CT

9. On May 19, 2021, at approximately 8:00 PM, New Haven Police Officers responded to the area of Ella T Grasso Boulevard and Stanley Street for the report of shots fired. ShotSpotter activated indicating that three rounds had been fired at 70 Stanley Street, and four rounds at 1391 Ella T Grasso Boulevard. Prior to NHPD officers' arrival, dispatch informed them there was a gunshot victim at this location. Upon arrival, NHPD officers located a male victim, later identified as Tashawn Brown (year of birth 2002), lying on his back. Another male was applying pressure to Brown's lower chest area attempting to administer medical aid. Brown was later transported via ambulance to Yale New Haven Hospital. Officers located twenty-two shell casings in the roadway (even more than had been picked up by ShotSpotter).

10. On March 21, 2022, Assistant United States Attorney (AUSA) Kaoutzanis and ATF New Haven Task Force Officer (TFO) Borges met with ▬▬▬ at the United States Attorney's office in Bridgeport, Connecticut. The purpose of the interview was to discuss the events and circumstances leading to the death of ▬▬ Tashawn Brown. ▬▬▬

4

stated she was at Edgewood Park with her family and extended family having a BBQ when ▇ ▇▇▇ (Angelo Gibson and Tashawn Brown) got into a physical altercation with other young males to include known Exit 8 gang members, QUAYMAR SUGGS and HECTOR DELGADO. Angelo Gibson (who associated with rival gang members) had previously had a problem with QUAYMAR SUGGS. Gibson had been jumped by SUGGS and was perceived as disrespectful to the Exit 8 gang. Shortly after the altercation ended, ▇▇▇ stated she observed a black sports utility vehicle (SUV) being driven by a black male, subsequently identified as ANTWAN HILL (year of birth 2004), and a Hispanic male, subsequently identified as HECTOR DELGADO (year of birth 2003) seated in the front passenger seat. ▇▇▇ was able to identify these individuals. She said that DELGADO exchanged words with ▇▇▇ and other family members until the black sports utility vehicle finally left. ▇▇▇ took a live Facetime video of the party and the fight and subsequent return of the black SUV. The affiant and other law enforcement officers have reviewed that video and it corroborates ▇▇▇ version of events.

11. ▇▇▇ stated that after the vehicle left, everyone was separated and left the park. Some time later, ▇▇▇ and the other males arrived back at the park and that is when ▇▇▇ heard gunshots. She was at the barbeque, but she looked up in the direction of the shots and stated she observed a second vehicle, which she described as a silver car traveling in the direction of Whalley Avenue from the Stanley Street area with a black male who she referred to as "Bam" (but law enforcement knows as "Blamm") sitting fully exposed outside of the vehicle on the rear driver side passenger window door frame shooting toward the park over the top of the vehicle. ▇▇▇ described "Bam's" distinct hair style and added that he was wearing a white t-shirt and was smiling as he shot. ▇▇▇ provided investigators a social media picture of the male, who investigators immediately

5

recognized as DOUGLAS a.k.a. "Blamm." DOUGLAS is a known Exit 8 gang member.

████████ subsequent testified in grand jury to the same information. Another witness, who also testified under oath, described a man matching DOUGLAS' description and with his unique hairstyle hanging out of the window and shooting over the top of the car into the park in the direction of Brown and his friends. Officer Eisenhard located camera footage from 1307 Ella T Grasso Boulevard, which showed a black sedan pull onto Stanley Street from Ella T Grasso Boulevard and park in front of 71 Stanley Street. The video shows Brown exiting the vehicle with three unidentified males. The males began to walk west on Stanley Street toward Ella T Grasso Boulevard when a silver car driving north on Ella T Grasso Boulevard and appears to slow down and shoot in the direction of the males. This is the vehicle from which DOUGLAS is believed to have been shooting.

12. On May 21, 2021, investigators arrested Devin SUGGS, a member of the Exit 8 gang, after an investigation with a stolen vehicle and a firearm was recovered. Investigators seized SUGG's cell phone pending a search warrant. On July 8, 2021 a search and seizure warrant was submitted and signed by Honorable Judge Burke.

13. Investigators reviewed evidence extracted from the cellular telephone after a comprehensive forensic download of the device. During the review, investigators located numerous videos of firearms. Investigators also located a video of a silver Honda CRV being recklessly driven doing donuts in a parking lot of Roberto Clemente Elementary School, located at 360 Columbus Avenue, New Haven, CT, which is in the Hill section of the city. This silver Honda CRV appeared to match the vehicle used in the homicide. SUGGS is known to be associated with DOUGLAS.

14. CIU Detective White was also able to review video surveillance from the day of the homicide, which showed a silver Honda CRV in the immediate area of the homicide. This vehicle matches the vehicle described by ▇ that DOUGLAS was observed shooting from, and the vehicle doing donuts on SUGGS' phone dump. CIU Detective White was able to identify the silver vehicle as a 2018 Honda CRV bearing CT registration AS-60141. A query of the vehicle's registration showed it was a stolen motor vehicle that was recovered by Milford Police Department on May 20, 2021, a day after the homicide. CIU Detective White spoke with Milford Police Department who advised her the vehicle was towed. CIU Detective White spoke with the insurance adjuster, who further advised her that during his evaluation of the vehicle he located a bullet hole through the roof of the vehicle. Investigators believe this would be indicative of someone sitting out of the passenger window shooting out of the vehicle. Milford Police Department went to the tow yard and retrieved the bullet fragment from the vehicle. The Insurance company provided Detective White pictures of the damage to the roof of the Honda, which shows damage consistent with a bullet entering the roof. This information corroborates ▇ testimony regarding DOUGLAS shooting from this position.

15. Upon further investigation, TFO Borges contacted adult probation, which revealed that DOUGLAS was currently on probation, and has been since his release from the State of Connecticut Department of Corrections custody on April 29, 2021. Furthermore, adult probation advised investigators that DOUGLAS had listed the TARGET TELEPHONE as his contact number.

## ADDITIONAL ATTEMPTED MURDERS

16. Preliminary analysis through the National Integrated Ballistic Information Network (NIBIN) has linked this murder to a number of other shooting incidents. At the scene of Brown's homicide, officers located 22 .380 shell casings on Ella T. Grasso Boulevard between Stanley Street and Edgewood Avenue. Officers also located .32 caliber casings and 9mm casings at this incident that were not linked to any previous incidents. The NHPD utilized NIBIN to analyze the .380 casings found on the scene. NIBIN analysis uses collected ballistics evidence, specifically expended shell cases found at the scenes of shootings, and then analyzes the cases for commonality against other shell cases that have been collected from other shooting scenes. NIBIN analyzes the firing pin impressions, ejector marks and other unique marks on the breach face of the shell case in order to link ballistic evidence. These marks are unique to specific firearms and are similar to the way that fingerprints are unique to individual people. The same way that no two people have the same fingerprints, no two firearms will leave the same exact marks on a shell case.

- **April 27, 2021 Shooting at 673 Dixwell Avenue (Attempted Murder 1)**

17. On or about April 27, 2021, at 7:36 p.m., the New Haven Police Department's (NHPD's) ShotSpotter gunfire-detection system alerted to 6 rounds fired at 681 Dixwell Avenue. Law enforcement responded to the scene and learned that a man had been shot in the thigh. Officers also recovered four .380 shell casings at the scene. Video surveillance from a liquor store located at 671 Dixwell Avenue showed a dark vehicle turn east on Brewster Street from Dixwell Avenue. A passenger of the dark vehicle then stuck his hand out of the window and started firing at a white vehicle parked on Brewster Street facing east. A male then exited the white vehicle and started walking toward Dixwell Avenue. An unknown male then drove the

8

white vehicle away. Law enforcement determined that the dark vehicle seen in the video was a Honda Civic bearing CT AU65480, which had been reported stolen the day before from a gas station in New Haven, CT. Officers identified a video on DEVIN SUGGS' telephone taken two hours after the shooting on April 27, 2021 at 9:23 p.m. of SUGGS wearing a hooded shirt and orange mask with black and white checkered flags on the front, pointing what appeared to be a semi-automatic pistol at the camera while in selfie mode. The pistol in this video appeared to be a Ruger LCP 380. Additionally, there were text messages wherein SUGGS stated they were in a "Black Honda," on April 27, 2021 at 4:34 p.m. and a black Honda was the suspect vehicle in the shooting. There was also a screen shot of "On Scene Media New Haven County" regarding the April 27, 2021 shooting with emojis at the top of the screen including crossed fingers and a red colored heart sent on April 27 at 11:11 p.m., from "TJ Frmthablock," or PRESTON—suggesting that Exit 8 members were involved in this attempted murder. The shell casings found at this shooting match the shell casings found at the scene of Brown's murder indicating the same firearm was used.

- **Shooting 2: May 10, 2021 Shooting at 1228 Quinnipiac Avenue (Attempted Murder 2)**

18. On or about May 10, 2021, at 5:16 p.m., NHPD received a gunshot complaint in the area of Foxon Boulevard and Quinnipiac Avenue. Officers responded to the scene and located five .380 casings in the roadway as well as two vehicles that had been struck by gunfire. The intended target of the gunshots appeared to be a white Infiniti that had been parked on Runo Terrace behind Quinnipiac Elementary School. The Infiniti had an apparent bullet hole in the rear driver door, and the rear driver's side tire was flat and also had a defect . A witness informed law enforcement that he had seen an older model silver Toyota Camry fire rounds at a white Infiniti. Three males were in the Camry, including two in the front of the vehicle wearing black

9

and a rear passenger wearing a full-face mask exposing only his eyes. The witness stated that the rear male passenger appeared to by hyping himself up prior to the shooting. The shell casings found at this shooting are matched through NIBIN with the shell casings found at the scene of Brown's murder and Attempted Murder 1.

- **May 14, 2021 Shooting at 42 Kossuth Street (Attempted Murder 3)**

19. On or about May 14, 2021, at 9:22 p.m., ShotSpotter alerted to probable gunshots at 42 Kossuth Street in New Haven. Officers responding to the scene spoke with witnesses who said they heard gunshots and saw a Honda leave the area with the victim inside, heading for the hospital. Officers located six .380 casings in front of 42 Kossuth Street. Statements later provided to law enforcement indicated that Exit 8 members and/or associates were involved in or aware of this shooting. The shell casings found at this shooting are matched through NIBIN with the shell casings found at the scene of Brown's murder and Attempted Murders 1 and 2.

- **May 17, 2021 Shooting at 55 Norton Street (Attempted Murder 4)**

20. On or about May 17, 2021, at 8:10 p.m., ShotSpotter alerted to one shot fired in the area of 55 Norton Street in New Haven. Upon arriving at the scene, officers located an abandoned white Nissan Rogue that was still on and in drive but had crashed into a parked vehicle on Norton Street. A registration check revealed that the Nissan had been stolen earlier that day. A witness on the scene told law enforcement that she had seen the white Nissan driving on Norton Street with a dark-colored sedan following behind. The witness heard one shot, which she believed came from the dark-colored sedan. The driver of the white Nissan then exited the vehicle and fled on foot. Officers located one spent .380 shell casing on Norton Street near the intersection with Chapel Street. The shell casings found at this shooting are matched through

NIBIN with the shell casings found at the scene of Brown's murder and Attempted Murders 1, 2 and 3.

## DOUGLAS' Criminal History

21. I reviewed criminal history records for DOUGLAS which reveal that he has been convicted of one felony charge in the State of Connecticut, for which he received a sentence of greater than one year of imprisonment. DOUGLAS' felony conviction is identified below:

- On March 11, 2020, DOUGLAS was convicted of criminal possession of a firearm, a felony, in violation of Connecticut General Statutes 53a-217. DOUGLAS received a sentence of eight years of incarceration, execution suspended after two years, and three years of probation.

## PROBABLE CAUSE FOR REQUESTED WARRANT

22. Due to the above information, investigators believe that the cell site location information of the TARGET TELEPHONE will help corroborate statements provided to investigators regarding the murder incident in New Haven, CT on May 19, 2021—one month after DOUGLAS was released in custody. Additionally, there is probable cause to believe that the user of the TARGET TELEPHONE was involved in the murder of Tashawn Brown on May 19, 2021 and that information associated with the TARGET TELEPHONE will provide evidence concerning the TARGET OFFENSES, including the presence of DOUGLAS in the vicinity of the homicide his location before and after the homicide, as well as potentially leads on the locations of potential evidence and the identities and locations of other conspirators.

23. Additionally, DOUGLAS was firing a gun near Stanley Street and the shell casings collected at the scene match four other attempted murders. I have reason to believe and do believe that the firearm DOUGLAS was using was also used in these four other incidents and

11

that he was likely present or at least involved in these other incidents. The preliminary investigation further reveals that these were all attempted murders committed by Exit 8 gang members. I am seeking cell site location information from April 27, 2021 until May 20, 2021 to corroborate whether DOUGLAS was involved in all of these acts of violence. I have reason to believe and do believe that DOUGLAS was likely with other co-conspirators both before and after the murder in light of the premeditation that appears to have gone into the murder and the fact that I know from my training and experience and information gained throughout this investigation, that Exit 8 gang members act together and often get together after acts of violence to celebrate exploits. Because the same firearm was used and all of the other attempted murders involved Exit 8 gang members, I further have reason to believe that DOUGLAS was likely present at the scene of these other incidents or was with Exit 8 gang members just before or after so as to provide or collect the firearm or coordinate the acts of violence. Based on my training and experience, I further know Exit 8 gang members to use their telephones to coordinate acts of violence, to take pictures and videos of their exploits and to travel with their phones on their persons as I believe DOUGLAS to do. I thus have probable cause to believe and do believe that the cell site evidence will help to corroborate DOUGLAS's involvement in the Subject Offenses over the time period in question.

## Background on Cell-Site Data and GPS

14. In my training and experience, I have learned that the PROVIDER provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio

signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

15. Based on my training and experience, I know that the PROVIDER can collect cell-site data about the TARGET TELEPHONE. I also know that wireless providers such as the PROVIDER typically collects and retains cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

Based on my training and experience, I know that wireless providers such as the PROVIDER typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as the PROVIDER typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the TARGET TELEPHONE's user and may assist in the identification of co-conspirators and/or victims.

### Authorization Request

17. Based on the foregoing, there is probable cause to believe that the records and other information requested will contain evidence of the TARGET OFFENSES. Accordingly, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41, authorizing the search of the information associated with the TARGET TELEPHONE, as identified in Attachment A, and directing the PROVIDERS to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

18. Because the warrant will be served on the PROVIDER, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

_____
MATTHEW BORGES
ATF Task Force Officer

Subscribed and sworn before me on May 11, 2022

_____
HON. S. DAVE VATTI
UNITED STATES MAGISTRATE JUDGE

## Cellco Partnership DBA Verizon Wireless —ATTACHMENT A

### Property to Be Searched

Records and information associated with cellular telephone call number (475) 227-1700 ("TARGET TELEPHONE") that are stored at premises controlled by Cellco Partnership DBA Verizon Wireless, a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey (the "PROVIDER").

## Cellco Partnership DBA Verizon Wireless —ATTACHMENT B

### Things To Be Seized

I. **Information to be Disclosed by the PROVIDER**

To the extent that the information described in Attachment A is within the possession, custody, or control of the PROVIDER, including any information that has been deleted but is still available to the PROVIDER or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the PROVIDER is required to disclose to the government the following information pertaining to the TARGET TELEPHONE listed in Attachment A for the period **of April 27, 2021 through May 20, 2021:**

   a. The following information about the customers or subscribers of the TARGET TELEPHONE:

      i. Names (including subscriber names, user names, and screen names);

      ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

      iii. Local and long distance telephone connection records;

      iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

      v. Length of service (including start date) and types of service utilized;

      vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

      vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

      viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

   b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the TARGET TELEPHONE, including:

ii



    i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

    ii. information regarding the cell towers and sectors through which the communications were sent and received, including T-Mobile Timing Advance.

**II.**   **Information to be Seized by the Government**

All information described above in Section I that constitutes evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Section 1962(d) (Racketeering Conspiracy); Title 18, United States Code, Section 1959 (Violent Crimes in Aid of Racketeering); Title 18, United States Code, Section 922(g) (Possession of a Firearm by a Prohibited Person); Title 18, United States Code, Section 924(c) (Possession of a Firearm in Furtherance of a Crime of Violence) from the period **of April 27, 2021 through May 20, 2021**.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the PROVIDER in order to locate the things particularly described in this warrant.

SDV